## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY JONES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-CV-1231 |
| | ) | |
| vs. | ) | District Judge Sara L. Ellis |
| | ) | |
| | ) | Magistrate Judge Daniel Martin |
| CITY OF CHICAGO, COUNTY OF COOK, | ) | |
| JAMES CORCORAN, DWAYNE DAVIS, | ) | |
| TENE McCOY CUMMINGS, TERESA | ) | **JURY TRIAL DEMANDED** |
| GUERRERO, and AS-YET UNKNOWN | ) | |
| CURRENT OR FORMER EMPLOYEES OF | ) | |
| THE CITY OF CHICAGO AND THE | ) | |
| COUNTY OF COOK, | ) | |
| | ) | |
| Defendants. | ) | |

---

### AMENDED COMPLAINT

Plaintiff Timothy Jones, by and through his court-appointed attorneys, and for his

Amended Complaint against Defendants City of Chicago, County of Cook, James Corcoran,

Dwayne Davis, Tene McCoy Cummings, Teresa Guerrero, and As-Yet Unknown Current and

Former Employees of the City of Chicago and the County of Cook states as follows:

### NATURE OF THE ACTION

1.      Plaintiff Timothy Jones brings this action under 42 U.S.C § 1983 and state

common law to redress serious violations of his constitutional rights. Mr. Jones spent more than

two years in jail for a crime he did not commit. Mr. Jones' arrest and prosecution was the

outgrowth of an investigation that even the prosecutor called "crappy."

2.      Mr. Jones therefore was the victim of an arrest warrant that never should have

issued, charges that never should have been brought, a case that never should have gone to trial,

and a trial that was delayed nearly a year because the state had not disclosed the alleged victim's

prior false allegation of rape. Mr. Jones entered Cook County Jail in August of 2012 and was not freed until he was exonerated on September 5, 2014.

3.      Defendant Davis, a Detective in the Chicago Police Department, was among those who unlawfully detained Mr. Jones.

4.      Defendant Corcoran, a Detective in the Chicago Police Department, was among those who unlawfully prosecuted Mr. Jones. (Collectively, Defendant Davis and Defendant Corcoran as well as the as-yet unknown current or former employees of the City of Chicago will be referred to as the "Defendant Detectives.")

5.      The Defendant Detectives' actions directly contravene Mr. Jones' Fourth Amendment rights under the United States Constitution and his rights under Illinois state law.

6.      On information and belief, Defendant Cummings and Defendant Guerrero (collectively, with the as-yet unknown current or former employees of the County of Cook, the "Defendant Prosecutors") did not disclose until the eve of Mr. Jones' trial (more than a year after he was charged) that the woman who accused him of sexual assault had previously accused another man of sexual assault. This belated disclosure of material evidence favorable to Mr. Jones violated his Fourteenth Amendment rights under the United States Constitution.

7.      The Defendant Prosecutors' actions directly contravene Mr. Jones' Fourteenth Amendment rights under the United States Constitution.

8.      Mr. Jones seeks actual, consequential, compensatory, and punitive damages, as well as attorneys' fees and court costs from the Defendant Detectives and the Defendant Prosecutors and indemnification from the City of Chicago and County of Cook.

## JURISDICTION AND VENUE

9.     Mr. Jones brings this action pursuant to state common law and 42 U.S.C. § 1983 to remedy violations of his rights under the Fourth Amendment of the United States Constitution under color of law. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and supplemental jurisdiction as provided by 28 U.S.C. § 1367(a).

10.     Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(2) in that the events giving rise to the claims herein occurred in the Northern District of Illinois.

## THE PARTIES

11.     Plaintiff Timothy Jones is a resident of Minneapolis, Minnesota.

12.     At all relevant times, the Defendant Detectives were duly sworn Detectives for the Chicago Police Department and acting within the scope of their employment and under color of law.

13.     Defendant City of Chicago is an Illinois municipal corporation that is or was the employer of each of the Defendant Detectives and is the indemnifying party for the actions of the Defendant Detectives and is being sued on an indemnification theory.

14.     At all relevant times, the Defendant Prosecutors were Assistant State's Attorneys in the Cook County State's Attorneys Office and acting within the scope of their employment and under color of law.

15.     Defendant County of Cook is a county of the State of Illinois that is or was the employer of each of the Defendant Assistant State's Attorneys and is the indemnifying party for the actions of the Defendant Prosecutors and is being sued on an indemnification theory.

## FACTS

16.     On July 20, 1998, a woman alleged that she was raped.  The alleged victim went to her local hospital for a rape examination. Although she claimed her alleged rapist slammed her down, pushed her against the wall, pinned her arms behind her back, and penetrated her from behind, the medical examination revealed no injuries, no signs of forcible entry, and nothing more than a "nontender discoloration" on the woman's back.

17.     The woman also met with Officer Angel Cobb at the hospital. That meeting instigated an investigation. At trial, the prosecutor characterized the investigation as follows: "Let's be honest here. This wasn't great police work . . . . [Officer Cobb] doesn't call an evidence technician out to the scene, which is down the block and had just occurred, which is truly atrocious that wasn't done. That scene should have absolutely been worked up."

18.     The initial, reporting officers never visited the alleged crime scene, and Detective Thomas McCadd, the detective initially assigned to the case, never did either.

19.     According to Detective Corcoran, who was deposed in this matter: "[T]ypically a detective would interview the victim, try and ascertain where this alleged assault occurred, try and gain access to the scene where it occurred for any possible evidence, be that just photographs, physical evidence, sheets."

20.     No one assigned to this case ever visited the woman's residence.

21.     The woman told Officer Cobb that she called the police from the downstairs neighbors' apartment. That apartment shared a common entrance with the woman's apartment. Nonetheless, no one ever interviewed the other inhabitants of the house. No one spoke to these witnesses in 1998 when the incident allegedly occurred or in 2012 when Mr. Jones was arrested and charged.

4

22.     At Mr. Jones' criminal trial, the prosecutor (not the public defender) castigated Detective McCadd's performance as well: "I'm sorry to say this, but he never meets the rape victim in person, he never goes to her house, he just tries calling her a few times."

23.     If the Chicago police did not appear to have much interest in investigating the alleged crime, the woman did not seem to have much interest in pursuing the alleged perpetrator either. For months, she did not return Detective McCadd's calls. According to Detective McCadd's report, when they finally spoke in January of 1999 the woman said "she had some knowledge of the offender's identity." She did not, however, share that information with Detective McCadd. Instead, she told Detective McCadd she did not wish to pursue the matter.

24.     The case then lay dormant for eight years until there was a match on a DNA sample taken from Mr. Jones. Even though the police now had a DNA match, the case stagnated because the police were unable to get in touch with the woman for six more years.

25.     Finally, in the summer of 2012 (nearly 14 years after the alleged rape), the police reached the woman. In a turnabout from her prior position, the woman was willing to talk, and she spoke with Detective Laura Skrip in June of 2012.

26.     Although it is impossible for Mr. Jones to know why the woman would concoct a false rape allegation, Mr. Jones' counsel suggested at the criminal trial that the woman's marital status may have given her motive to hide a consensual sexual encounter.

27.     At the time of the alleged rape, the woman was separated from her then-husband. They subsequently divorced, but they re-married in 2010. In fact, when Detective Skrip spoke with the woman in June of 2012, the husband (from whom the woman was estranged at the time of the alleged rape) was in the apartment.

5

28.     There is no evidence that the woman took any initiative to pursue her rape claim between January of 1999 and 2012. Newly re-married in the summer of 2012, though, she gave her most expansive account of the incident to date. In fact, she related details that she had not conveyed when the police interviewed her 14 years earlier.

29.     For example, the woman stated that her alleged assailant was wearing a nametag, a critical detail she had not shared with officers at the time of the sexual encounter.

30.     On July 31, 2012, Defendant Davis prepared the warrant for Mr. Jones' arrest. Shortly thereafter, Mr. Jones, who was living in Nebraska, was arrested there and extradited to Chicago.

31.     Mr. Jones cooperated with the police and prosecutors in Chicago. When Detective Corcoran and his partner interviewed Mr. Jones, he denied raping anyone. He stated that he might have had consensual sex with the woman but did not remember. Mr. Jones gave the same account when the detectives interviewed him again in the presence of an assistant state's attorney.

32.     Nonetheless, on August 16, 2012, Detective Corcoran recommended that charges be filed against Mr. Jones, and he was subsequently charged with non-aggravated criminal sexual assault.

33.     Mr. Jones was arrested and charged even though the authorities did not have the woman's medical records at the time and despite numerous red flags from the "crappy" and "atrocious" police investigation.

34.     The warning signals only got worse from there.

35.     During the trial preparation, Mr. Jones' counsel also learned that the woman had previously made at least one false rape allegation. In December of 1998, shortly after she

accused Mr. Jones of rape, the woman accused another man of raping her. That case fell apart almost immediately. The woman's sister came forward to reveal the ruse, and the assistant state's attorney rejected the charge of aggravated criminal sexual assault because of the lack of physical injuries and the inconsistencies between the woman's account and the witnesses' stories.

36.     Mr. Jones' criminal trial was scheduled for October 15, 2013, but Mr. Jones' counsel only learned of the woman's prior sexual assault allegation on October 9, when it was disclosed in a motion *in limine* filed by Defendant Prosecutors to exclude evidence of the woman's prior sexual history. On October 11, 2013, Mr. Jones moved for a continuance of the trial date because "[t]his new disclosure contains new evidence and information that the defendant is unaware of."

37.     The trial therefore did not begin until July 28, 2014, and Mr. Jones' two-day bench trial concluded on September 5, 2014. The state's failure to disclose this material evidence favorable to Mr. Jones therefore significantly delayed Mr. Jones' trial and essentially meant that he spent nearly an additional year in jail.

38.     After closing arguments on September 5, 2014, Judge Thaddeus Wilson found Mr. Jones not guilty. Mr. Jones was finally released from the Cook County Jail more than two years after he had arrived.

## COUNT I—42 USC § 1983
## Fourth Amendment: False Arrest and False Imprisonment
## (Against Detective Dwayne Davis)

39.     Plaintiff incorporates by reference paragraphs 1-38, as though fully set forth in this Count I.

40.     As described above, Defendant Davis, while acting individually, as well as under color of law and within the scope of his employment, deprived Mr. Jones of his constitutional

right to be free from unreasonable seizures, in violation of the Fourth Amendment to the United States Constitution.

41.     As described more fully above, Defendant Davis accused Mr. Jones of criminal activity and asserted influence to initiate the seizure, arrest, and incarceration of Mr. Jones without probable cause.

42.     On information and belief, the warrant for Mr. Jones' arrest was recklessly procured and contained numerous material omissions.

43.     Defendant Davis prepared the warrant for Mr. Jones' arrest based on his limited investigation and on information provided to him by other officers and police records.

44.     As described above, before pursuing a warrant for Mr. Jones' arrest, neither Defendant Davis nor any other officers involved in this investigation ever interviewed anyone other than the woman, who had previously made a false rape allegation.

45.     In addition, no officers ever investigated the scene of the alleged crime.

46.     Further, before pursuing a warrant for Mr. Jones' arrest, Defendant Davis failed to obtain the woman's medical records from the alleged rape, which showed no signs of forcible entry, no injuries and nothing more than a "nontender discoloration" on the woman's back.

47.     As a direct and proximate result of Defendant Davis' actions, Mr. Jones suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

48.     Defendant Davis' actions were undertaken maliciously, intentionally, or with gross negligence and reckless disregard for Mr. Jones' rights, thereby justifying an award of punitive damages in a fair and reasonable amount.

WHEREFORE, Plaintiff Timothy Jones demands judgment against Defendant Davis and respectfully requests that this Court award Mr. Jones (i) actual and punitive damages; (ii) the cost of this action, including reasonable attorneys' fees incurred herein; and (iii) such other and further relief as this Court deems equitable and just.

**COUNT II—42 USC § 1983**
**Fourteenth Amendment: Violation of Due Process Under *Brady***
**(Against Defendant Prosecutors)**

49.     Plaintiff incorporates by reference paragraphs 1-38, as though fully set forth in this Count II.

50.     As described above, Defendant Prosecutors, while acting individually and jointly, as well as under color of law and within the scope of their employment, deprived Mr. Jones of his constitutional right to a fair trial.

51.     As described more fully above, the woman's prior false accusation of rape came to light only through the Defendant Prosecutors' motion *in limine*, which was filed just days before the initial trial date. This evidence was favorable to Mr. Jones.

52.     On information and belief, Defendant Prosecutors either willfully or inadvertently withheld this material evidence from Mr. Jones.

53.     On information and belief, there is a reasonable probability that prompt disclosure of the suppressed evidence would have altered the prosecution's decision to proceed to trial.

54.     These actions prejudiced his constitutional right to a fair trial, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

55.     As a direct result of the misconduct described in this Count, Mr. Jones suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

56.     Defendant Prosecutors' actions were undertaken maliciously, intentionally, or with gross negligence and reckless disregard for Mr. Jones' rights, thereby justifying an award of punitive damages in a fair and reasonable amount.

WHEREFORE, Plaintiff Timothy Jones demands judgment against Defendant Prosecutors and respectfully requests that this Court award Mr. Jones (i) actual and punitive damages; (ii) the cost of this action, including reasonable attorneys' fees incurred herein; and (iii) such other and further relief as this Court deems equitable and just.

## COUNT III—MALICIOUS PROSECUTION
### (Against Defendant Detectives)

57.     Plaintiff incorporates by reference paragraphs 1-38, as though fully set forth in this Count III.

58.     As described above, Defendant Detectives individually and jointly, and within the scope of their employment, accused Mr. Jones of criminal activity and exerted influence to initiate and to continue and perpetuate judicial proceedings against Mr. Jones without probable cause.

59.     In so doing, Defendant Detectives caused Mr. Jones to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

60.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and with reckless indifference to Mr. Jones' rights.

61.     As a direct and proximate result of Defendant Detectives' misconduct described in this Count, Mr. Jones suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

62.     Defendant Detectives' actions were undertaken maliciously, intentionally, or with gross negligence and reckless disregard for Mr. Jones' rights, thereby justifying an award of punitive damages in a fair and reasonable amount.

WHEREFORE, Plaintiff Timothy Jones demands judgment against Defendant Detectives and respectfully requests that this Court award Mr. Jones (i) actual and punitive damages; and (ii) such other and further relief as this Court deems equitable and just.

## COUNT IV—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against Defendant Detectives)

63.     Plaintiff incorporates by reference paragraphs 1-38, as though fully set forth in this Count IV.

64.     The acts and conduct of Defendant Detectives as set forth above were extreme and outrageous. As more fully described above, Defendant Detectives' actions were undertaken with intent to cause, or in reckless disregard of the probability that their conduct would cause, severe emotional distress to Mr. Jones.

65.     As a direct and proximate result of Defendant Detectives' actions, Mr. Jones suffered and continues to suffer emotional distress.

66.     Defendant Detectives' actions were undertaken maliciously, intentionally, or with gross negligence and reckless disregard for Mr. Jones' rights, thereby justifying an award of punitive damages in a fair and reasonable amount.

WHEREFORE, Plaintiff Timothy Jones demands judgment against Defendant Detectives and respectfully requests that this Court award Mr. Jones (i) actual and punitive damages; and (ii) such other and further relief as this Court deems equitable and just.

### COUNT V—INDEMNIFICATION
### (Against the City of Chicago)

67.     Plaintiff incorporates by reference paragraphs 1-38, as though fully set forth in this Count V.

68.     Defendant City of Chicago is the indemnifying entity for the actions, described above, of the Defendant Detectives.

WHEREFORE, pursuant to 745 ILCS 10/9-102, should Defendant Davis and/or Defendant Corcoran be found liable on one or more of the claims set forth herein, Plaintiff Timothy Jones demands that Defendant City of Chicago be found liable for any judgment—other than punitive damages—he obtains thereon.

### COUNT VI—INDEMNIFICATION
### (Against the County of Cook)

69.     Plaintiff incorporates by reference paragraphs 1-38, as though fully set forth in this Count IV.

70.     Defendant County of Cook is the indemnifying entity for the actions, described above, of the Defendant Prosecutors.

WHEREFORE, pursuant to 745 ILCS 10/9-102, should either or both of the Defendant Prosecutors be found liable on one or more of the claims set forth herein, Plaintiff Timothy Jones demands that Defendant County of Cook be found liable for any judgment—other than punitive damages—he obtains thereon.

### JURY DEMAND

Plaintiff Timothy Jones hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38(b) on all issues so triable.

Dated: March 21, 2017

Respectfully submitted,

PLAINTIFF TIMOTHY JONES

By: /s/ Brendan J. Healey
            One of his attorneys

Brendan J. Healey (ARDC No. 6243091)
Cristina M. Salvato (ARDC No. 6315714)
MANDELL MENKES LLC
One North Franklin St., Suite 3600
Chicago, Illinois 60606
Telephone: (312) 251-1000
Facsimile: (312) 251-1010